UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) No. 10 CR 195 |
| BRIAN HOLLNAGEL, | ) |
| BCI AIRCRAFT LEASING, INC., | ) |
| CRAIG PAPAYANIS, | ) |
| JASON R. HYATT, | ) |
| WILLIAM HATAMYAR, | ) |
| JEFFREY MEYER, | ) |
| MARTIN COLLIER, and | ) |
| ROBERT CARLSSON, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On March 31, 2011, the government filed a motion to disqualify Paula Junghans as counsel for Defendants Brian Hollnagel and BCI Aircraft Leasing, Inc. For the reasons discussed below, the Court denies the motion in part and denies the motion in part without prejudice as premature.

### INTRODUCTION

Ms. Junghans is co-lead counsel for Defendants Hollnagel and BCI Aircraft Leasing, Inc. (collectively, "Defendants"). Defendants retained Ms. Junghans and her law firm, Zuckerman Spaeder LLP, more than four years ago. (R. 238, Defs.' Resp. at 3.) Since March 2007, Ms. Junghans has represented Defendants in various investigations and proceedings, "from the initial search of BCI's offices in April 2007, and through every phase of the grand jury investigation that preceded the Superseding Indictment." (*Id*.) Ms. Junghans represented BCI Aircraft

Leasing, Inc. and Hollnagel in a separate but related civil matter, *United States Securities & Exchange Commission v. Hollnagel et al.*, No. 07 CV 4538 (N.D. Ill.) (Bucklo, J.) (the "SEC Litigation"), which is now stayed. Ms. Junghans has participated in "massive document discovery" in both the present criminal matter and the SEC Litigation, has met and communicated with Defendants on "innumerable occasions," and has spent "thousands of hours learning the pertinent facts and preparing defenses in this extraordinarily complex case." (*Id.*)

In its motion, the government seeks to disqualify Ms. Junghans as Defendants' trial counsel on the grounds that she is a potential witness regarding the creation and production of certain documents in the SEC Litigation that are implicated in this criminal case. Specifically, the Superseding Indictment in this criminal matter alleges that Defendants produced fraudulent documents to the SEC in *SEC v. Hollnagel et al.*, that those allegedly fraudulent documents furthered the fraudulent financing scheme set forth in Count Two of the Superseding Indictment, and that in producing those allegedly fraudulent documents to the SEC, Defendants obstructed justice, in violation of 18 U.S.C. § 1512(c)(2). *See* R. 46, Superseding Indictment at Count XV. The government also seeks to disqualify Ms. Junghans as counsel at any evidentiary hearings regarding these documents where she may be called to testify.[1]

---

[1] The government also asks the Court to disqualify Ms. Junghans as trial counsel because she is a potential witness regarding the allegations contained in Count Twenty-One of the Superseding Indictment. The government's argument, as Defendants appear to concede, carries some weight. Nevertheless, because the Court has severed Count Twenty-One of the Superseding Indictment, *see* R. 264, 8/5/11 Mem. Op. & Order, the Court denies the government's motion to disqualify Ms. Junghans on that basis as premature and without prejudice. As set forth in the opinion granting severance of the tax counts (including Count Twenty-One), the Court will schedule a trial date for the severed counts, including Count Twenty-One, after this trial is completed. At that time, the government may renew its motion to disqualify counsel in connection with that trial.

# BACKGROUND[2]

On September 8, 2010, a federal grand jury returned a twenty-one count Superseding Indictment charging Defendants Brian Hollnagel, Martin Collier, BCI Aircraft Leasing, Inc. ("BCI"), and others with engaging in a fraudulent financing scheme that deprived investors, financial institutions and others of money and property. As described in the Superseding Indictment, Defendant BCI was a privately-owned Illinois corporation that obtained funds from individual and institutional investors to create limited liability corporations ("LLCs") for the purpose of purchasing, selling, and leasing commercial aircraft. In return for their investments, the investors would receive a monthly distribution from the LLC, as well as a share of any profits the LLC received if it sold its aircraft. The allegations in the Superseding Indictment set forth an elaborate scheme by which Defendant BCI, by and through its officers and others, defrauded financial institutions and individual investors in order to secure funds, fraudulently misrepresented the LLCs' finances to investors, and withheld profits that should have been allocated to the LLCs' investors following the sale of aircraft, retaining the profits instead for their own benefit. The Superseding Indictment specifically alleges that Defendants BCI, Hollnagel and Collier (i) deprived investors of profits they should have received following the sale of the commercial aircraft affiliated with their investments, and (ii) lied to investors following those sales about "reinvesting" their investment capital into other commercial aircraft purchases when, in fact, they did no such thing.

The U.S. Securities and Exchange Commission initiated a securities fraud lawsuit against

---

[2] The Court presumes the parties' familiarity with the history and facts of this case. The Court thus recites only the facts relevant to this motion.

Defendants Hollnagel and BCI relating to the same allegedly fraudulent representations in 2007. As part of that proceeding, the court in the SEC Litigation conducted an evidentiary hearing in order to determine, among other things, whether Hollnagel and BCI had defrauded certain of its investors. At the conclusion of the evidentiary hearing, the court ordered BCI and Hollnagel to provide the SEC with an accounting of the investment entities in which one of BCI's investors continued to hold equity. *See SEC v. Hollnagel et al.*, No. 07 CV 4538, R. 35 at 9. The Superseding Indictment in this matter alleges that on or about September 6, 2007, pursuant to the court's order, Defendants Hollnagel, Collier and BCI prepared and submitted documents entitled "Analysis of 2004-5 Investments" and "Analysis of 2004-6 Investments" (hereinafter, the "Initial Accountings") to the SEC which "purported to be accountings of BCI Prime Investment 2004-5, LLC and BCI Prime Investment 2004-6, LLC," two of the investment entities created and managed by Defendant BCI. (R. 46, Superseding Indictment at Count II ¶¶ 30-32, Count XV ¶ 3.) The Superseding Indictment alleges that, among other things, the Initial Accountings contained false representations about the total amount of investor funds in each investment entity and about the entities' financial dealings – namely, the details surrounding the ownership in and sale of specific aircraft. (*Id.*) The Superseding Indictment further alleges that on or about September 17, 2007, Defendants Hollnagel, Collier and BCI prepared and submitted a revised accounting of BCI Prime Investment 2004-5, LLC, a document entitled "Analysis of 2004-5 Investments" (hereinafter, the "Amended Accounting"), which contained false representations similar to those found in the Initial Accountings and, additionally, falsely represented that a new aircraft had been substituted into the BCI Prime Investment 2004-5, LLC investment entity. (*Id.*) Count Fifteen of the Superseding Indictment charges Defendants Hollnagel, Collier and

BCI with obstructing and attempting to obstruct the SEC Litigation, in violation of 18 U.S.C. § 1512(c)(2).

Ms. Junghans represented Defendants BCI and Hollnagel in the SEC Litigation. As such, she provided Defendants with legal advice and counsel throughout those proceedings, including counsel on the court-ordered Initial and Amended Accountings. Defendants have produced all attorney-client communications regarding the preparation and production of those Initial and Amended Accountings to the government.[3] In its motion, filed before the government received the attorney-client communications, the government states that Ms. Junghans is a "potential witness" that the government "might" call to testify at trial. (R. 206, Govt. Mot. at 1, 2, 12, 13, 14.) The government anticipates that, if called as a witness, Ms. Junghans would testify that Defendants "did not inform her that the draft and final versions of the accountings that they provided to her for her review were false." (*Id*. at 4.) The government contends this testimony reveals that Defendants "used Ms. Junghans to further conceal their fraudulent scheme" and "misled Ms. Junghans about the veracity of the accountings, resulting in those accountings being provided to the SEC." (*Id*.) This testimony is relevant, asserts the government, because "[t]estimony by a clients' [*sic*] lawyer that tends to demonstrate that her clients duped her can be nothing other than prejudicial." (*Id*. at 13.)

Defendants vigorously oppose the government's motion to disqualify their co-lead trial counsel. For the reasons below, the Court agrees and denies the government's motion.

---

[3] The Court reviewed those communications in connection with the government's crime-fraud motion, *see* R. 207. The Court denied the government's motion as without merit after finding that the communications between Defendants and their counsel (including Ms. Junghans) did not reveal any evidence that Defendants were seeking to further or conceal a fraud. (R. 279, 9/1/11 Minute Entry.)

5

## ANALYSIS

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. "The right to select counsel of one's choice . . . has been regarded as the root meaning of the constitutional guarantee" in the Sixth Amendment. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 147-48, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006) (citations omitted). Although the right to counsel of choice is not absolute, "disqualification of defense counsel should be a measure of last resort, and 'the government bears a heavy burden of establishing that disqualification is justified.'" *United States v. Gearhart*, 576 F.3d 459, 464 (7th Cir. 2009) (quoting *United States v. Diozzi*, 807 F.2d 10, 12 (1st Cir. 1986)). *See also Owen v. Wangerin*, 985 F.2d 312, 317 (7th Cir. 1993) ("Attorney disqualification is 'a drastic measure which courts should hesitate to impose except when absolutely necessary.'") (quoting *Schiessle v. Stephens*, 717 F.2d 417, 419-20 (7th Cir. 1983)); *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721-22 (7th Cir. 1982) (holding that the Seventh Circuit has long viewed attorney disqualification as a "drastic measure," and warning that motions for disqualification "should be viewed with extreme caution" given their potential misuse as "techniques of harassment").

"Although the disqualification decision is 'left primarily to the informed judgment of the trial court,' the force of the core constitutional command requires that the court start from a default position that gives effect to the defendant's Sixth Amendment right to choose his own counsel." *United States v. Turner*, 594 F.3d 946, 951 (7th Cir. 2010) (internal citation omitted). The Supreme Court has recognized a "presumption in favor of the defendant's choice of counsel, and this presumption can be overcome only by an actual or serious potential for conflict." *Id*.

6

"A conflict that amounts to a breach of the code of professional ethics obviously qualifies." *Id.* at 952 (citation omitted).

In those situations where disqualification is "both legitimate and necessary," *Freeman*, 689 F.3d at 722, the Court retains broad discretion to determine whether disqualification is proper. *See Whiting Corp. v. White Mach. Corp.*, 567 F.2d 713, 715 (7th Cir. 1977). To make that determination, the Court balances the clients' interest in retaining the counsel of their choice against the Court's interest in upholding the ethical standards set forth in its local rules. *See Hutchinson v. Spanierman*, 190 F.3d 815, 828 (7th Cir. 1999); *Whiting*, 567 F.2d at 715. District courts also retain broad discretion to adopt a remedy other than disqualification. *Gearhart*, 576 F.3d at 465 (citing examples of alternative remedies for conflicts of interest).

The Northern District of Illinois has generally adopted the American Bar Association Model Rules ("ABA Model Rules") as its rules of professional conduct. *See* N.D. Ill. Local Rule 83.50.[4] Relevant to this motion, ABA Model Rule 3.7 provides:

> A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
> (1) the testimony relates to an uncontested issue;
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
> (3) disqualification of the lawyer would work substantial hardship on the client.

ABA Model Rule 3.7(a). By its plain language, the Rule thus comprehends a two-part inquiry: First, is Ms. Junghans "likely to be a necessary witness"? If so, would her disqualification

---

[4] Local Rule 83.50 does provide an exception for "any matter not addressed by the ABA Model Rules or for which the ABA Model Rules are inconsistent with the Rules of Professional conduct in the state in which the lawyer's principal office is located." N.D. Ill. L.R. 83.50. Ms. Junghans's principal office is in Washington D.C. The ABA Model Rules address the "lawyer as witness" scenario in a manner identical to the D.C. Rules of Professional Conduct. *See* D.C. Rule of Professional Conduct 3.7. The Court therefore applies the ABA Model Rules.

"work substantial hardship" on Defendants?[5]  "[T]he risk of nonpersuasion rests with the prosecution rather than the defendant."  *Rodriguez v. Chandler*, 382 F.3d 670, 672 (7th Cir. 2004) (citing *Wheat v. United States*, 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988)).  *See also Turner*, 594 F.3d at 953 ("Recall that the government bears the risk of nonpersuasion here.") (citations omitted).

The government fails to allege, let alone establish, that Ms. Junghans is "likely to be a necessary witness" as required under Rule 3.7(a).  Instead, the government's briefs describe Ms. Junghans merely as a "potential" witness.  Because the government does not meet its burden on this threshold question, the Court denies its motion.  *Rodriguez*, 382 F.3d at 672.

Even if the Court were to overlook the government's tentative characterization of the likelihood that it will call Ms. Junghans to testify, however, the government's prediction of what it intends to elicit from Ms. Junghans also fails to provide any support for an inference that Ms. Junghans could be a "necessary witness" or that the Court must disqualify her.  The government contends that Ms. Junghans's work on the court-ordered accountings in the SEC Litigation makes her a fact witness to the concealment allegations in Count Two and the obstruction charges in Count Fifteen of the Superseding Indictment.  (R. 247, Govt. Reply at 3.)  The government reasons that because Defendants did not disclose to Ms. Junghans that the information they were providing her during their work on the Initial and Amended Accountings was fraudulent – which, the Court reminds the government, is still, at this point, merely an allegation – Ms. Junghans's testimony would support (or, in evidentiary terms, tend to make more likely) Defendants' fraud, concealment, and obstruction of justice.  Stated another way, the

---

[5] The first two exceptions do not apply to the facts and circumstances presented here.

government argues,

> As set forth in the [separately filed] Crime-Fraud motion, the court-ordered accountings [in the SEC Litigation] were false in numerous respects. Thus, when defendants Hollnagel and BCI informed Ms. Junghans that the information contained therein was true, they were not being truthful. Testimony by a clients' lawyer that tends to demonstrate that her clients duped her can be nothing other than prejudicial.

R. 206, Govt. Mot. at 13. While the Court need not address the admissibility of Ms. Junghans's anticipated testimony at this juncture, the government's rationale is questionable, and Defendants' objections are well taken.

Finally, although the Court need not address the "substantial hardship" test at this time, it does not agree with the government's quick dismissal of that concern. Defendants retained Ms. Junghans more than four years ago. Ms. Junghans has devoted a considerable amount of time and resources to her engagement in this highly complex criminal matter. The government proffers no cognizable concerns for moving the Court to disqualify Ms. Junghans as counsel.

## CONCLUSION

For the aforementioned reasons, the Court denies the government's motion to disqualify Ms. Junghans as Defendants' trial counsel.

**Date:** September 6, 2011

**ENTERED**

_____
**AMY J. ST. EVE**
**United States District Court Judge**